JOHN E. HAYDEN *vs.* R. WALLACE AND SONS MANU-
FACTURING COMPANY ET AL.
MARTIN MOLSTRE *vs.* R. WALLACE AND SONS MANU-
FACTURING COMPANY ET AL.

Third Judicial District, Bridgeport, October Term, 1923.

WHEELER, C. J., BEACH, CURTIS, KEELER and WOLFE, Js.

A court of equity in this State will not open and set aside a judgment
rendered through the negligence of the petitioner, or through his
alleged mistake which was in fact due to his own negligence. This
rule rests upon public policy, which finds its expression in the maxim
*interest reipublicæ ut sit finis litium;* and is equally applicable to an
award of a Compensation Commissioner which is sought to be set
aside solely upon the ground that the Commissioner, under § 5355,
has the same power to open and modify his awards as a court of
this State has to open and modify its judgments.

In the present case the defendants, a manufacturing company and its
insurer, voluntarily agreed, in the usual form, to pay a stated
amount of compensation to the plaintiffs, two employees of an
independent contractor, who had been injured while such con-
tractor was taking down a water tank upon the premises of the
manufacturing company; and this agreement was submitted to
and approved by the Compensation Commissioner, who after-
ward made one or two supplemental awards with which the de-
fendants complied without appeal or protest. Something over a
year later the defendant insurance company claimed to have ascer-
tained the fact that the plaintiffs were not employees of the manu-
facturing company when injured, and had no valid claim upon it
for compensation, and because of this alleged mistake the defend-
ants sought to have the awards of the Compensation Commissioner
opened and set aside. Upon a reservation of the case by the Su-
perior Court, after the Commissioner had refused to grant the
application, it was *held:*—

1. That the Compensation Commissioner had no power, under the cir-
cumstances disclosed by the record, to open and set aside the
awards.

2. That the course of conduct pursued by the defendants estopped them
from abandoning the position they had deliberately taken and
followed, especially as the alleged mistake could have been easily
discovered by the use of reasonable diligence.

Each of the three grounds upon which the Compensation Commissioner

is authorized to exercise his power to modify or open an award, under General Statutes, § 5355, is subject to the limitation that such exercise must be "for any proper action."

A Compensation Commissioner in acting upon an application to open an award for an alleged mistake, is controlled and limited by the same principles that govern a court in a similar situation.

Submitted on briefs November 1st—decided December 13th, 1923.

APPEALS by the defendants from the refusal of the Compensation Commissioner of the third district to reopen and set aside a voluntary agreement and former awards in favor of the plaintiff in each case, taken to the Superior Court in New Haven County and reserved by that court, *Brown, J.*, of its own motion, for the advice of this court. *Superior Court advised to render judgment dismissing the appeals from the Commissioner.*

The above entitled cases involve substantially the same facts and were argued together, and hence one statement covering each case is made and one opinion written thereon.

On January 8th, 1923, the defendants in the above entitled actions, under § 5355 and § 5364 of the General Statutes, moved that the voluntary agreement dated January 19th, 1922, and the supplemental findings and awards, dated May 27th, 1922, be reopened and set aside because they were based upon the mistaken assumption that the plaintiffs were employees of the Wallace & Sons Mfg. Co., and in order to properly carry out the spirit of the Compensation Act; and because, in accordance with the rules of equity, they ought to be set aside; and, for reasons, they assigned the following facts:—

On July 13th, 1921, the R. Wallace and Sons Manufacturing Company contracted with one Fitzpatrick to take down a water-tank, and agreed to furnish planks and timber for staging. Fitzpatrick was an independent contractor and had in his employ on this work

John Hayden and Martin Molstre, plaintiffs herein. This work was not a part or process of the business of the Wallace & Sons Company and was not under its control, and neither Hayden nor Molstre were its employees, but were employed and hired and their wages fixed and paid by Fitzpatrick. While so employed, Hayden and Molstre suffered injuries which did not arise out of or in the course of their employment by the Wallace & Sons Company.

A voluntary agreement for compensation was signed on or about August 9th, 1921, by Molstre, and on January 19th, 1922, by Hayden, and the Wallace & Sons Company and the American Mutual Liability Insurance Company, and approved by the Commissioner. The question of whether Hayden and Molstre were employees of the Wallace & Sons Company was never in issue before the Commissioner nor passed upon except as herein stated. The R. Wallace & Sons Manufacturing Company was a corporation engaged in the manufacturing business and having its principal place of business in Wallingford. On July 13th, 1921, the defendant the American Mutual Liability Insurance Company insured the Wallace & Sons Company under a policy covering it for any injuries suffered by their employees. As soon as the American Mutual Liability Insurance Company ascertained the fact that Hayden and Molstre were not employees of the R. Wallace & Sons Company, but of Fitzpatrick, viz. on November 10th, 1922, it orally directed the attention of the Commissioner to this fact and requested permission to set up its claims in writing, which was done.

The defendants contend that the rules of equity permit them to raise the question of employment, and that unless this right is granted, they or one of them, "will be liable to pay a large amount of money owing to a mistake of fact and error in the application of the

law by reason of the fact that the question as to employment was never heretofore in issue."

The Commissioner found that on January 19th, 1922, a voluntary agreement in the usual form was entered into between the parties and was duly approved by the Commissioner; that such agreement described the injuries suffered by Hayden and Molstre respectively, and stated in each case that such injury was one "arising out of and in the course of employment." On May 27th, 1922, in the case of Hayden, a finding and award supplemental to the voluntary agreement was made, further describing the injuries and making provision for compensation and medical service. In the case of Molstre two supplemental findings and awards were made. Due notice was given defendants of the hearings on these supplemental awards. No claim was made at any time that the plaintiffs were not employees of the R. Wallace & Sons Company. The Commissioner awarded and adjudged that the motions in the cases of Hayden and Molstre, to set aside the voluntary agreement and the supplemental findings and awards, be denied, and that no evidence be heard thereon.

*Benedict M. Holden* and *Donald C. McCarthy,* for the plaintiff in each case.

*Clayton L. Klein* and *Joseph E. Carey,* for the defendants.

WHEELER, C. J. The defendants moved that the Commissioner permit them to prove facts from which, if proved, it must have been held, as matter of law, that the plaintiffs were employees of Fitzpatrick, an independent contractor, and not of the R. Wallace & Sons Manufacturing Company, in the work they were

engaged upon when injured; and further, that a voluntary agreement for compensation was entered into by the defendants with Molstre on August 9th, 1921, and with Hayden on January 19th, 1922, and thereafter supplemental findings and awards were made on due notice, in the case of Molstre twice, and of Hayden once, and no claim was ever made that they were not employees of the R. Wallace & Sons Company until the present motion, and no appeal was ever taken from the approval by the Commissioner of the voluntary agreements, or from these awards. Payments have been made by the Insurance Company under these agreements and awards up to November 10th, 1922. The Commissioner assumed the facts stated in each motion to be true for the purpose of the ruling, and denied the motions.

The single question to be determined is whether the agreements and awards can be reopened under General Statutes, § 5355, upon the ground that the plaintiffs were not at the time of their injuries employees of the employer against whom the awards were made, and when the parties defendants conceded the fact of the employment at the time they made the voluntary agreement and acquiesced in the subsequent awards without appeal. The Commissioner's power to modify or reopen an award is governed by General Statutes, § 5355, which provides that the award or voluntary agreement for compensation shall be subject to modification, upon the request of either party, "whenever it shall appear to the compensation commissioner that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence, on account of which the compensation is paid, has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award in order properly to carry out the spirit of this chap-

ter.  The commissioner shall also have the same power to open and modify an award as any court of the State has to open and modify a judgment of such court."

The circumstances detailed in the motion to reopen do not assume to state a case where the incapacity of either plaintiff has increased, decreased or ceased, or the measure of dependence changed.  The conditions upon which the motion is based are those existent when these agreements and awards were made, and hence do not fall under the second ground—changed conditions—which the statute specifies as a basis for modification of the agreement or award. *Grabowski* v. *Miskell*, 97 Conn. 76, 83, 115 Atl. 691.  The motion to open and modify falls, if at all, within the third ground for modification named in the statute: the presence of a state of facts which would authorize a court of the State to open and modify one of its judgments.  Stated in another form and as broadly as the terms of the statute admit of: would the Superior Court, as a court of equity, have power to open and modify its judgment under the same set of facts as are set forth in this motion?  If so, the Commissioner has a like power; if not, the statute gives him no such power.

The facts set forth in the motion show that the plaintiffs had no just claim for compensation against the R. Wallace & Sons Company, since the work they were doing was done by them for an independent contractor and without any legal relation to this defendant company.  The failure to ascertain this was due to the negligence of these defendants or their attorney or representative.  This situation was like that in *Day* v. *Welles*, 31 Conn. 344, 348, of which we said, in passing upon a demurrer to a bill in equity to open a judgment by default: "It certainly does seem strange at first sight, that in a court of equity, upon an application within its jurisdiction, addressed to its discretion, and

asking a new trial, the respondent may admit that the action could have been successfully defended and was groundless, and the judgment therefore unjust and oppressive, and that it is against conscience for him to retain and enforce it, and yet insist successfully that the petitioner can have no relief, if chargeable with any inattention or neglect. But the rule is clear, that equity will not interfere to grant a new trial in an action at law, however unjust the judgment or great the hardship, unless the judgment was obtained through fraud, accident or mistake, unconnected with any negligence or inattention on the part of the judgment debtor, and the rule is founded on the necessity of the case; for if it was otherwise, petitions to set aside or enjoin judgments at law would become too common, and a court of equity be compelled generally to revise decisions at law which on legal principles should be final."

In *Jarvis* v. *Martin,* 77 Conn. 19, 21, 58 Atl. 15, it appeared, in an action to set aside a judgment, that counsel had through negligence permitted the action to be discontinued and a judgment of discontinuance to be entered and the action to be dismissed. On a bill in equity to open the judgment the petitioner relied, as do these defendants, upon the general equity powers inherent in the court. In denying the power of our court of equity to grant such relief, we said: "It is a well-established principle that courts of equity will not relieve against the operation of judgments rendered through the negligence or inattention of the party claiming to be aggrieved or his attorney. . . . The plaintiff, however, contends that the situation presented is one arising from mistake and not from negligence. The distinction is not fundamental. Equity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his counsel, unless the mistake is 'un-

mixed with negligence,' or to use the language of this court, 'unconnected with any negligence or inattention on the part of the judgment debtor,' or, to quote again, 'when the negligence of the party is not one of the producing causes.' . . . The negligence or inattention of an attorney is the negligence or inattention of the client. . . . The facts of this case furnish the plaintiff no means of escape from the application of these well-settled rules."

These decisions state our law authoritatively and conclusively. There is no occasion to trace the growth of this principle of our equity jurisprudence. Underlying it is the principle of universal authority whose base is public policy, and is expressed in the maxim *Interest reipublicæ ut sit finis litium*, which we denominated in *Burritt* v. *Belfy*, 47 Conn. 323, 329, as the "embodiment of wisdom and justice."

If this principle were not controlling, the course of conduct of these defendants would estop them to abandon the position deliberately taken and long assumed, because they acted upon a mistake of facts of which reasonable diligence on their part would have apprised them. *Monroe Nat. Bank* v. *Catlin*, 82 Conn. 227, 230, 73 Atl. 3.

The defendants meet the obstacle interposed by these settled principles, by their contention that we have construed this statute with such liberality as to support their claim to reopen these awards. They point to our having likened the relation of the Commissioner to his award during the entire compensable period to that of a court over a judgment during the term at which it was rendered. *Thompson* v. *Towle*, 98 Conn. 738, 120 Atl. 503. The application of this resemblance was to cases brought under the first and second grounds of modification specified in the statute and not to the third. Counsel fail to note the limitation placed by us

upon this resemblance when we say, in close connection with this statement: "The only limitation upon a Commissioner's power to open an award is that it must be 'for any proper action thereon.'" And by that we meant that the three grounds upon which the Commissioner was authorized to exercise his power to modify or reopen an award were subject to the limitation that such exercise must be "for any proper action." To permit the Commissioner to open and modify an award under the third named ground of this statute would be contrary to the principles governing a court in a similar situation, would be a defiance of the terms of this statute, and would not be an exercise of his power "for any proper action."

Nor are the defendants aided by our holding in *Fair* v. *Hartford Rubber Works Co.*, 95 Conn. 350, 355, 111 Atl. 193, that the rule of equity that courts will not act in a case of mistake of fact at the instance of a private suitor who might, in the exercise of reasonable diligence, have correctly informed the court, is not applicable to the Commissioner. We were speaking of a mistake made through inadvertence, not of a mistake made in a case of negligence long continued.

The Superior Court is advised in each case to dismiss the appeal and affirm the action of the Commissioner in denying the motion to set aside the voluntary agreement and awards.

In this opinion the other judges concurred.